(No. 36803.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN READER, Plaintiff in Error.

*Opinion filed November 30, 1962.*

JASON ERNEST BELLOWS, of Chicago, appointed by the court, (BELLOWS, BELLOWS & MAGIDSON, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, John Reader, was convicted of the crime

of murder of one Morris Bailen in the criminal court of Cook County after a trial by jury and was sentenced to 99 years imprisonment in the penitentiary. By this writ of error he asserts that the trial court erred in failing to instruct the jury on defendant's theory of the case; that he was not proved guilty beyond all reasonable doubt; that he should have been discharged in the trial court, not having been brought to trial within four months of his arrest; that the court erred in receiving testimony concerning the mental condition of the deceased during a period of his hospitalization prior to death; and that the trial court erroneously admitted a purported confession into evidence, where the evidence showed that all persons who had viewed the defendant in custody were not called as witnesses as to his treatment by the police.

In September of 1933 Morris Bailen, owner of a wholesale junk shop in Chicago, was shot by a man who entered the shop apparently to commit a robbery. The defendant was identified as being the same man by two employees of the shop who were present at the attempted robbery. After Bailen was shot, the defendant was apprehended in the basement of a home near the junk shop by several police officers. Bailen was taken to a hospital where he died on November 25, 1933. The bullet had caused a complete fracture of the left femur of the deceased and before his death in the hospital, he had contracted a confluent bronchopneumonia and chronic osteomyelitis.

The instruction regarding the defendant's theory of the case which the court refused to give is as follows:

"You are instructed that the burden is upon the State to prove the cause of death beyond a reasonable doubt and to a moral certainty, and this proof must show that death was occasioned directly by criminal act of the defendant, but if you find that the injury inflicted by the defendant merely contributed to his death, and was not the sole or immediate cause of death, then you should

find the defendant not guilty of the charge of murder." We know of no case which requires the injury inflicted by the defendant to be "the sole or immediate cause of death" and the defendant has cited none to us. As the instruction directs the jury to find the defendant "not guilty" if they find that the injury inflicted by the defendant was not "the sole and immediate cause of death," the instruction does not properly state the law and the trial judge correctly refused the instruction.

Defendant contends that the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt, and more specifically, that the State failed to establish the *corpus delicti* because the evidence fails to show that the shooting was the cause of death. We have examined the record carefully as to the evidence presented by Dr. B. L. Schrager and Dr. Harry Harris. The question is whether death was caused by the gunshot wound or by pneumonia. Considering the evidence of the doctors in its entirety, the facts proved are such that would warrant a jury in believing beyond a reasonable doubt that the gunshot wound was the cause of death and that the subsequent pneumonia which arose several days prior to death in the hospital was merely a condition which often follows hospitalization due to such a gunshot wound. The *corpus delicti* was satisfactorily proved.

Next the defendant claims that he should have been discharged in the trial court as he was not brought to trial within four months of his arrest. The record reveals defendant was arrested on September 9, 1933, and that on January 8, 1934, on motion of counsel for the defendant the case was advanced from January 18, 1934, to January 8, 1934. Also on said date, and immediately thereafter, the court continued the cause until January 18, 1934, on motion of counsel for the defendant. As the statutory four-month period did not expire until January 9, 1934, the defendant's motion was therefore made prior to the expiration of the

four-month period. The case was ultimately tried on January 25, 1934. Since defense counsel's motion for continuance was within the four-month period, defendant cannot now claim that he is entitled to a discharge under the four-month statute. (*People* v. *Clark,* 17 Ill.2d 486.) Furthermore, the defendant failed to raise the question of discharge before conviction and we have held that where the defense fails to raise the question prior to conviction, the four-month statute is waived. (*People* v. *Walker,* 13 Ill.2d 232.) The defendant further contends that he did not consent to a waiver of the four-month statute and that his trial counsel was incompetent in regard to this particular phase of the trial. He cites *People* v. *Oden,* 20 Ill.2d 470 as authority for sustaining this contention. The State maintains that case is inapplicable. In *People* v. *Oden,* we considered alleged grounds for reversal on the basis of incompetence of appointed counsel, even though certain objections were not made at the trial. In that case the State introduced in evidence statements taken six months before trial which the prosecutor knew contained prejudicial references to other crimes. The prosecutor did not move to have these matters deleted from the statements and the defendant's counsel did not object. This court there said that it is no answer for the State to say that defendant's appointed counsel did not object, as he claimed his counsel was incompetent. The court, therefore, considered the errors assigned even though no objection was made at the trial. We do not consider the actual question presented in *People* v. *Oden* to be analogous to the one in the present case. While we are unable to ascertain why the public defender made the motions that he did on January 8, 1934, we cannot say that the making of said motions rendered trial counsel incompetent. We can conceive of many reasons, all of which would be *dehors* the record, as to why defense counsel would ask for a continuance even though it resulted in a waiver of the four-month statute.

The trial court admitted into evidence testimony revealing that while Bailen was in the hospital he was mentally unbalanced for a number of weeks; that he had hallucinations; that he would yell at the top of his voice; and that he had to be given morphine to quiet him down. The admission of this evidence is claimed to be error for the reason that it had no relation to the guilt or innocence of the accused and was prejudicial to the defendant. The State points out that objections to the questions which elicited said testimony were made only after the question was asked and the answer given, and that the objections were, therefore, untimely made. While the objections were made after the questions were answered, the fact still remains that the questions and answers had no relation to the guilt or innocence of the accused and should have been stricken. In examining the entire record we believe this testimony was merely incidental to the medical history of the deceased, was not emphasized to the jury, and was not deliberately elicited to arouse the prejudice of the jury. The failure to strike the answers did not amount to reversible error. Defendant cites *People* v. *Dukes,* 12 Ill.2d 334, in support of his contention that the conviction must be reversed for this alleged error. There an 18-year-old boy testified that he was a son of the deceased and that he lived with his mother, two sisters and brother. Although objections were made to that testimony, they were overruled, and Dukes received a death sentence. In the *Dukes* case it appeared that the evidence relating to the family of the deceased was deliberately introduced for the sole purpose of arousing the passion of the jury, was emphasized by an inflammatory argument urging the death penalty for Dukes "because of the family he has destroyed," and coupled with repeated instances of prejudicial argument to the jury. We do not consider the *Dukes* case as controlling.

Finally, it is claimed that admission in evidence of a purported confession taken from defendant after he had

been in custody 44 hours, during which time defendant was repeatedly questioned, and further where the evidence showed that not all persons who had viewed the defendant in custody were called as witnesses as to his treatment by the police, was error and deprived the defendant of his liberty without due process of law and also deprived defendant of equal protection of the laws.

Frank McGrail, a police officer, testified that he went into the basement of the cottage where the defendant was hiding on the 9th day of September, 1933, with officer Mackay and officer Callopy. There they found the defendant, and McGrail asked him why he shot the man and defendant said he shot him because he made a wrong move. Defense counsel cross-examined but did not quiz McGrail on the oral confession, nor did he cross-examine McGrail with regard to any brutality by McGrail against defendant on September 9, nor did he mention the written confession taken September 11, 1933. Thereafter officer Mackay was called, and, outside the presence of the jury, he stated that he had a conversation with the defendant at the station on September 11 about 10:00 A.M. at which time officers Bialek and Callopy were also present. At that time the written confession was taken. He further stated that although defendant was arrested on the 9th and the statement was to be taken on the 10th, nevertheless he never talked to the defendant nor saw him until the 11th. Officer Callopy, in testifying outside the presence of the jury, stated that he talked to defendant on the 11th of September and that he was present at the time officer Mackay asked the questions and secured the statement of the written confession. Officer Bialek testified that he was present on the 11th when the written confession was taken. The three officers, Mackay, Callopy and Bialek, all testified that none of them beat nor struck the defendant at any time or place. The defendant, in testifying, stated that after he was arrested an officer struck him but he did not identify the officer by name. He further stated that he was struck

again in the squad car. He makes no comment as to the 10th of September, but states that on the 11th they struck him when they took him to an office to make him confess. He states that the officers said he was going to get his medicine and that he was going to make a confession. According to his own statement, his response was that "he had no confession" to make. He then testified that before he signed the statement two officers struck him. The record reveals that he indicated who the officers were that struck him, but the record does not show whom he was indicating and he had previously said he didn't know the officers. He said he finally signed the statement to stop them from beating him. Thereafter the court admitted the confession into evidence. Defendant contends that the statement on its face shows that it was made in the presence of officers Mackay, Bialek and Callopy. All of these officers testified as to taking of the statement. He also states that the testimony indicated that officer McGrail was also present but did not testify as to the voluntary nature of the confession. We have examined the record carefully and find no statement by anyone that officer McGrail was present at the time the statement was taken. When officer McGrail was testifying, the only thing he testified to was the arrest in the basement and the oral confession of the defendant. The defense counsel cross-examined officer McGrail briefly, but did not choose to do so extensively. It, therefore, appears from the record that officers Mackay, Bialek and Callopy were the only ones who testified as to voluntariness of the confession aside from the defendant, and that they were the only ones present at the confession. The test laid down as to who must testify as to the voluntariness of a confession was stated in the case of *People* v. *Sammons*, 17. Ill.2d 316. The contention of the defendant that all lock-up keepers, wagon-men, or other police personnel who viewed the defendant while in custody must be called as witnesses to the voluntary nature of the confession is without merit. To compel all police personnel

who ever viewed the defendant while in custody to testify as to the voluntary nature of a confession is unreasonable and not required by the test laid down in the *Sammons* case.

The contention of the defendant that he was deprived of his constitutional rights because he was incarcerated for a period of 44 hours and was not brought before a magistrate without unnecessary delay was passed on by this court quite recently in *People* v. *Melquist, ante* p. 22. (May, 1962.) in the *Melquist* case we stated: "The defendant's contention that the signed Ferlic confession and the re-enactment were inadmissible is based largely upon the opinions of the United States Supreme Court in *McNabb* v. *United States*, 318 U.S. 332 and *Mallory* v. *United States*, 354 U.S. 449. As we have pointed out, these cases deal with problems of Federal criminal procedure and do not require a holding that confessions in State court prosecutions be held invalid merely because they are obtained during a period of illegal detention. (*People* v. *Miller*, 13 Ill.2d 78.) We are of the opinion that the evidence at the hearing clearly established that defendant's confessions were voluntary and they were therefore properly admitted in evidence." The *Mallory* case has likewise been cited to us here but we see no reason to depart from our holding in the *Melquist* case.

Having carefully considered all of the assignments of error, we are of the opinion that the defendant received a fair trial, free from reversible error. Judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*