THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LEE DORDIES, Defendant-Appellant.

First District (2nd Division)   No. 76-1394

Opinion filed May 23, 1978.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Robert Lee Dordies, was indicted for murder (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1, 9—1(a)(2), 9—1(a)(3)) and armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2). Following a jury trial, he was found guilty of both offenses and sentenced to 18 to 35 years on the murder conviction and 8 to 15 years on the armed robbery conviction, the sentences to run concurrently. On appeal defendant contends that (1) the court erred in giving a particular instruction; (2) the court erred in returning the jury for further consideration of the murder charge; and (3)

defendant was not proved guilty of the offenses beyond a reasonable doubt.

Calvin Thomas testified that on October 13, 1973, he and defendant were walking near 41st Street and King Drive in the city of Chicago when they decided to rob someone. They spotted an elderly man in a drugstore and began to follow him. Thomas moved in front of the man, later identified as Sam Stevenson, and pulled out a starter pistol, saying "It's a stick-up." At the same time, the victim reached into his own pocket and pulled out a gun. Thomas said that defendant then struggled with the victim and pulled the gun away from Stevenson. When Thomas and defendant saw a police car approaching, they turned and ran. Defendant turned again and fired the gun; Thomas then turned and saw Stevenson falling. At that point Thomas and defendant ran to an "El" train and divided the money they had taken from the victim. Shortly after the shooting, police officers James Alexander and Patrick Thompson arrived on the scene and found Stevenson. They took him to the hospital where he died three weeks later.

For several days after the shooting Thomas and defendant passed the gun back and forth between them. On November 3, 1973, Thomas, defendant, Eddie Robinson, and three other men walked into an apartment building where defendant gave Robinson the gun he had taken from Stevenson. When two security guards spotted the six young men drinking wine and smoking marijuana, Robinson threw the gun between two pipes in a radiator. One of the guards observed this, recovered the gun, and retrieved a bullet from Robinson's pocket. After the police were called, all six men were taken into custody. On November 21, 1973, Investigator Timothy Tidmarsh interviewed defendant in regard to the incident. When defendant indicated that he wanted to make a statement and began to relate the details of the night when Stevenson was shot, Tidmarsh summoned an assistant state's attorney and a court reporter.

Dr. Joseph Claparol, a coroner's pathologist, testified at trial that he performed the autopsy on Stevenson. The doctor found a partly healed bullet wound on the lower front chest, two surgical wounds on the stomach, and a wound on the pancreas where the bullet probably entered. Stevenson's abdominal cavity contained a large amount of pink turbid fluid and a large blood clot, which may have resulted from the perforation and developing infections. In Claparol's professional opinion, the cause of death was the bullet wound of the lower chest penetrating into the abdomen, going through the stomach with lacerations of the pancreas and subsequent infections.

Dr. Richard Shapiro, Stevenson's physician who treated him after the initial surgery and treatment, testified that the victim was very sick after

the first surgery. Stevenson required a respiratory support machine, intravenous feeding, blood transfusions, antibiotics, and sedatives. He developed extensive peritonitis, a fever, and very low blood pressure. There was general agreement among the hospital personnel not to operate again because the risks of another operation outweighed the risks of not operating. A tracheotomy was also performed. In Shapiro's professional opinion, the cause of death was pulmonary and infectious complications of the gunshot wound.

Edmond Roman, an assistant state's attorney, testified that he was summoned to the police station and was present when defendant gave his statement. Roman read the statement aloud to the jury; it basically reiterated Thomas' testimony. Although given the opportunity to sign the statement in question, defendant refused to do so. Defendant did not testify.

At the instruction conference the state submitted an instruction not found in Illinois Pattern Jury Instructions, Criminal (IPI). The instruction read:

> "You are instructed that where a person inflicts upon another a wound which is dangerous, that is calculated to endanger or destroy life it is no defense to a charge of murder that the victim's death is contributed to by infection, respiratory problems, internal bleeding or other complications or that the victim did not die immediately."

The court modified the suggested instruction and tendered it to the jury along with the other instructions.

The jury found defendant guilty of both charges, but a problem developed when the jury was being polled. One of the jurors said, "May I ask a question, your Honor?" An *in camera* hearing was then conducted and the juror stated that while he believed defendant was guilty of armed robbery, he had doubts about the cause of death. The juror said that although he had earlier found defendant guilty of murder, he did not want that to be his verdict now. The court then stated it would have to send the jury back for further deliberation. Defense counsel objected to the procedure of sending the jury back on the murder verdict alone, arguing that the jury should reconsider both verdicts or that the court should declare a mistrial. Once the court overruled the defense objection, it entered judgment on the armed robbery verdict and sent the jury back for further consideration of the murder charge. When the jury returned another verdict finding defendant guilty of murder, the jury was polled again. There were no additional problems and the court entered judgment on the murder verdict. Thereafter, defendant was sentenced and this appeal ensued.

## I.

Defendant contends that the giving of the non-IPI instruction was error because the wording of the instruction deprived him of the opportunity to have the jury consider his theory of defense and because the instruction was unnecessary as the issue was adequately covered by other IPI instructions. We agree that the instruction was erroneously given.

■■■ The sole function of instructions is to convey to the minds of the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles, arrive at a correct conclusion according to the law and the evidence. (*People v. Gambony* (1948), 402 Ill. 74, 81-82, 83 N.E.2d 321.) Further, jury instructions should be neither misleading nor confusing, and should fully and fairly inform the jury of the applicable law. (*People v. Godbout* (1st Dist. 1976), 42 Ill. App. 3d 1001, 1009, 356 N.E.2d 865; *People v. Foster* (4th Dist. 1974), 23 Ill. App. 3d 559, 560, 319 N.E.2d 522; *People v. Fort* (1st Dist. 1971), 133 Ill. App. 2d 473, 486, 273 N.E.2d 439.) In our opinion, the instruction as given may have mistakenly led the jury to believe that if defendant shot the victim and the victim later died, that defendant was guilty of murder, even if unconnected, intervening factors caused the death.

The instruction, as given, informed the jury that:

> "[W]here a person inflicts upon another a wound which is dangerous, that is calculated to endanger or destroy life it is no defense to a charge of murder that the victim did not die immediately."

Although the prosecution argues that the instruction accurately states the law, we think that statement is improper when presented as a jury instruction. In the case at bar, defendant presented no witnesses and did not testify himself. Instead, by means of cross-examining the two doctors, defense counsel attempted to bring out the possibility that the victim's death resulted from his poor health or faulty surgery, irrespective of the gunshot wound. Yet the instruction could have been interpreted to mean that if defendant shot Stevenson and Stevenson subsequently died due to *any* cause, then defendant was guilty of murder. This understanding of the instruction could have deprived defendant of one of his theories of defense. An instruction should not take from the jury the right to consider any evidence properly before it (*People v. True* (1924), 314 Ill. 89, 94, 145 N.E. 198), as the defendant is entitled to the benefit of any defense shown even by slight evidence and the reasonable inference therefrom (*People v. Loden* (2nd Dist. 1975), 27 Ill. App. 3d 761, 764, 327 N.E.2d 58). Since each party is entitled to have the jury instructed on his theory of the case

(*People v. Johnson* (1st Dist. 1976), 42 Ill. App. 3d 425, 438, 355 N.E.2d 699; *People v. Curtis* (3rd Dist. 1967), 90 Ill. App. 2d 231, 233, 232 N.E.2d 457), instructions should not ignore proffered defenses (see *People v. Munroe* (1958), 15 Ill. 2d 91, 100, 154 N.E.2d 225 (insanity defense); *People v. Brown* (2nd Dist. 1971), 132 Ill. App. 2d 875, 878, 271 N.E.2d 395 (statutory exemption)).

■■ Moreover, we note that the instruction was evidently fashioned from a statement in the case of *People v. Stamps* (5th Dist. 1972), 8 Ill. App. 3d 896, 291 N.E.2d 274:

> "But more important, and controlling, is the generally recognized principle that where a person inflicts upon another a wound which is dangerous, that is, calculated to endanger or destroy life, it is no defense to a charge of homicide that the alleged victim's death was contributed to by, or immediately resulted from, unskilled or improper treatment of the wound or injury by attending physicians or surgeons." (8 Ill. App. 3d 896, 901-02.)

Yet instructions which are inconsistent with the general purposes endorsed by our supreme court in the publication of Illinois Pattern Jury Instructions are not to be given even though they may be a correct statement of the law and though their use has been approved in the past. (*People v. Schabatka* (3d Dist. 1974), 18 Ill. App. 3d 635, 640, 310 N.E.2d 192.) The non-IPI instruction in question has not been approved in the past, nor does it contain a correct statement of law. The instruction ignores the possibility of a supervening act. When the State has shown the existence, through the act of the accused, of a sufficient cause of death, the death is presumed to have resulted from such act, unless it appears death was caused by a supervening act disconnected from any act of the defendant. (*People v. Meyers* (1945), 392 Ill. 355, 359, 64 N.E.2d 531; accord, *People v. Dillon* (1st Dist. 1975), 28 Ill. App. 3d 11, 20, 327 N.E.2d 225; *People v. Humble* (5th Dist. 1974), 18 Ill. App. 3d 446, 451, 310 N.E.2d 51; *People v. Brown* (2nd Dist. 1973), 9 Ill. App. 3d 730, 734-35, 293 N.E.2d 1; *People v. Paulson* (1st Dist. 1967), 80 Ill. App. 2d 44, 48-49, 225 N.E.2d 424.) However, the injuries inflicted by the accused need not be the sole or the immediate cause of death in order to constitute them the legal cause of death. *People v. Love* (1978), 71 Ill. 2d 74, 84, 373 N.E.2d 1312; *People v. Reader* (1962), 26 Ill. 2d 210, 213, 186 N.E.2d 298.

■■ Not only was the instruction misleading for the reasons previously discussed, but it was also unnecessary. Since the adoption of Illinois Supreme Court Rule 451(a), it is now the rule that the approved uniform instructions shall be used and modified only where the facts make the uniform instructions inadequate. (Ill. Rev. Stat. 1971, ch. 110A, par. 451(a); *People v. Phillips* (3d Dist. 1970), 129 Ill. App. 2d 455, 461, 263 N.E.2d 353.) Only where there is no IPI instruction that accurately

reflects the applicable law should a non-IPI instruction be given. (*People v. Dickens* (5th Dist. 1974), 19 Ill. App. 3d 419, 424, 311 N.E.2d 705.) Here, IPI Criminal No. 7.01, which accurately stated the applicable law, was given. That instruction said:

> "A person commits the crime of murder who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual."

Thus, the jury was informed that if it found defendant had performed the act which caused Stevenson's death—intentionally, knowingly or knowing of the strong probability of death or great bodily harm—then defendant was guilty of murder. Although the state urges that 7.01 did not explain that the three-week interval between the shooting and the death did not excuse defendant's culpability, we think the jury could have reasonably inferred the same from the instruction.

Having determined that the non-IPI instruction was erroneously given, the next inquiry is whether defendant was prejudiced by that error. The state maintains that any error must be termed harmless. In order to determine error to be harmless, we must believe, based upon the facts and circumstances disclosed in the record, that it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Lewis* (1st Dist. 1974), 18 Ill. App. 3d 281, 285, 309 N.E.2d 784; People v. Jackson (1st Dist. 1973), 15 Ill. App. 3d 761, 766, 305 N.E.2d 223.) We are convinced that the error here was harmless because, contrary to defendant's argument on appeal, the instruction did not deprive defendant of his defense.

■■ Our review of the record reveals that the defense raised at trial was one of reasonable doubt. When defense counsel moved for a directed finding after the State rested its case, the sole basis for the motion was that the prosecution had not proved a *prima facie* case. The attorney made no mention of the victim's health or of faulty surgery. When the State submitted the instruction in question, defense counsel complained that it was non-IPI, that it would confuse the issue before the jury, that the state was presupposing a possible appellate argument, and that the statement of law did not belong in an instruction. The attorney never contended that the instruction deprived his client of a defense. In closing argument defense counsel attempted to raise a reasonable doubt of defendant's guilt by questioning the credibility of the prosecution witnesses, pointing out inconsistencies in their testimony, suggesting that defendant gave his statement in the absence of family, arguing that the State had not proved every element of each offense, implying that there may have been a

mistake in operating procedures and maintaining that the State had not proved defendant's intent to commit the crimes. We note that the passing reference to faulty surgery was presented as only one of many factors tending to establish a reasonable doubt of defendant's guilt. Under these circumstances we cannot say that defendant was deprived of his defense or that he was prejudiced by the erroneous instruction. Where the evidence is clear and convincing and proof of guilt is so conclusive that no verdict other than the one finding the defendant guilty could have reasonably been returned, error in instructions will not necessarily require reversal. *People v. Ward* (1965), 32 Ill. 2d 253, 256, 204 N.E.2d 741; accord, *People v. Stewart* (1970), 46 Ill. 2d 125, 128, 262 N.E.2d 911; *People v. Truelock* (1966), 35 Ill. 2d 189, 192, 220 N.E.2d 187.

## II.

After the jury returned guilty verdicts on both the murder and the armed robbery charges, the jurors were polled individually. Although the entire jury affirmed their verdicts as to the armed robbery charge, one juror expressed doubt as to the cause of the victim's death. He said that while he had found defendant guilty of murder earlier, he now had doubts and no longer wished that to be his verdict. Defendant contends that the court erred in returning only the murder charge to the jury for further deliberations, rather than sending back both charges or declaring a mistrial. In essence, defendant claims that the procedure used indicated the court's tacit approval of the armed robbery verdict and had a coercive effect on the jury. Yet every member of the jury had affirmed his armed robbery verdict at that point and the court merely entered judgment on a unanimous verdict.

Defendant urges, however, that by returning only the murder charge for further deliberation, the jury was effectively informed that the court did not believe the hesitant juror actually had doubts about the victim's cause of death. The claim is wholly speculative. We cannot agree that the court's procedure had the same type of coercive effect on the jurors as would the giving of an *"Allen* charge." (*Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154.) There was no deadlocked jury here. Until the jury was polled it appeared that, in fact, the jury was unanimous in its finding of guilt on both charges. This is in sharp contrast to the coercive nature of language in an *Allen* charge which urges "those in the minority on the jury to re-evaluate their positions giving consideration to the fact that the majority of the jury who heard the same evidence have taken a different position." (*People v. Prim* (1972), 53 Ill. 2d 62, 73, 289 N.E.2d 601.) In the case at bar the juror had previously taken the same position as the majority. At most, the court's procedure suggested that the jury as a whole reconsider its verdict. We find no reason to interfere with

the trial court's exercise of its discretion, particularly where defendant has not demonstrated that he was in any way prejudiced by the procedure invoked.

## III.

■■ Lastly defendant contends that he was not proved guilty beyond a reasonable doubt because there is an innocent hypothesis for the victim's death. (*People v. Benson* (1960), 19 Ill. 2d 50, 61, 166 N.E.2d 80.) In support thereof defendant posits the medical testimony established that the major factor in the victim's death was respiratory failure or a terminal blood clot; and that neither the gunshot wound, nor the resulting infection was fatal. Defendant has chosen to misconstrue the clear and convincing testimony of the two physicians. Dr. Claparol said that in his professional opinion the cause of death was the penetration of the bullet wound through the victim's body and subsequent infections. Dr. Shapiro said that in his professional opinion the cause of death was complications of the gunshot wound. Neither doctor waivered from his stated opinion under cross-examination. Although defendant has attempted to construct an innocent hypothesis for the death of Sam Stevenson, the record as a whole refutes his suggestion that the decedent died from respiratory problems, poor general health, advanced age, faulty surgery or a blood clot, any or all of which were totally unconnected to the gunshot wound. The evidence adduced at trial reasonably and sufficiently connected defendant's acts to the victim's death; and there was no evidence suggesting an act or cause of injury apart from defendant's conduct. *People v. Love* (1978), 71 Ill. 2d 74, 373 N.E.2d 1312.

Although defendant relies on the previously cited *Benson* case, our supreme court in *Love* distinguished *Benson* on the same basis we do. Unlike the trier of fact in *Benson*, the jury here was not left to conjecture and speculation in determining whether defendant's acts caused Stevenson's death. The established facts warranted the jury's belief beyond a reasonable doubt that defendant shot the victim with a gun; and that the gunshot wound and complications from such wound caused the victim's death. (*People v. Reader* (1962), 26 Ill. 2d 210, 213, 186 N.E.2d 298.) In light of the conclusive proof of defendant's guilt, the jury could not have reasonably returned any other verdicts than the ones finding him guilty. Therefore, we affirm the judgments of convictions rendered on the murder and armed robbery verdicts.

Affirmed.

PERLIN and BROWN, JJ., concur.