**IN THE COURT OF APPEALS OF IOWA**

No. 13-2082
Filed April 22, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AHMET MAHALBASIC,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Henry County, Emily S. Dean,

District Associate Judge.


        A defendant appeals his conviction for involuntary manslaughter.

**AFFIRMED.**


        D. Raymond Walton of Beecher Law Offices, Waterloo, for appellant.

        Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant

Attorney General, Darin Stater, County Attorney, and Edward G. Harvey,

Assistant County Attorney, for appellee.


        Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

The district court convicted truck driver Ahmet Mahalbasic of involuntary manslaughter for the highway deaths of Sterling Hagen and his two-year-old daughter, Eva. *See* Iowa Code § 707.5(2) (2011). On appeal, Mahalbasic challenges the State's proof of recklessness and proximate cause. Finding both elements satisfied, we affirm the conviction.

## I.    Background Facts and Proceedings

Shortly after noon on July 1, 2012, Mahalbasic was driving his 2003 Volvo tractor trailer westbound on Highway 34 east of Mt. Pleasant. Highway 34 is a four-lane, divided highway that runs across southern Iowa.[1] The speed limit is sixty-five miles per hour (mph). To his right on the north side of the highway, Mahalbasic noticed a semi-trailer for sale on the lot of Boles Auto, a used car dealership. Mahalbasic stopped and parked his rig in the right lane of the highway. He turned on his emergency flashers, left the truck, and walked across the gravel shoulder and a grassy corridor to the dealership. He did not put out emergency triangles or cones behind his trailer, though truck drivers are required to carry that safety equipment with them.

A short time later, a GMC Yukon driven by Hagen slammed into the back of the parked semi-trailer. Hagen's two-year-old daughter, Eva Etka, was strapped in her child safety seat on the right rear seat of the SUV. The father and daughter both sustained fatal injuries on impact. Mahalbasic was out of his truck when the collision occurred.

---

[1] U.S. Highway 34 runs from Berwyn, Illinois to Granby, Colorado.

Reconstruction of the accident indicated the Yukon was traveling at the speed limit. At this location, westbound Highway 34 has a slight left-hand curve. A state trooper testified less than five seconds would have elapsed from the time the SUV negotiated the curve before it rear-ended the parked semi. The trooper opined that although the bend in the road did not impede visibility, a slight curve could "mess with your perception as to where the vehicles are actually located." The investigation revealed no skid marks or other evidence to suggest Hagen tried to stop. The trooper believed the position of the SUV at impact suggested Hagen may have tried to steer to the right at the last minute to avoid the collision. The evidence showed Hagen was not talking on his cell phone at the time of the collision. Toxicology tests showed neither Hagen nor Mahalbasic was under the influence of intoxicants.

Law enforcement officers testified the highway's shoulder was ten feet wide, enough space for Mahalbasic to have parked his truck safely off the traveled portion of the roadway. The investigation did not reveal any evidence that an equipment malfunction forced Mahalbasic to park where he did. In a brief conversation with a deputy at the scene, Mahalbasic said he stopped "his semi on the road to look at a trailer that was for sale." Officers did not issue any traffic citations to Mahalbasic.

Motorists who encountered Mahalbasic's truck parked in the roadway testified to their concerns. One of those drivers, Raymond Peebler, testified he was "maybe a quarter mile" away when he saw the parked truck. Peebler recalled "slamming" on his brakes when he realized the semi was not moving.

As Peebler moved to the left lane, he realized the truck "was actually backing up" in the right lane to move closer to Boles Auto. Peebler testified: "it just really kind of took my breath away . . . because by the time I got stopped, I was right beside him." Another driver, Kory Lindell, testified that when he was "at approximately the 150 or 100 yard mark away from the semi," he "noticed the hazards were on. They were dimly lit, but they weren't like LED lights. I swerved to the left, to the inside lane. I noticed the two vehicles behind me had to hit the brakes and swerve to the inside. . . . And that's when I called 911 to report a semi stopped in the outside lane." Lindell testified he "felt like it was going to turn into something bad, a bad situation." A third driver, Steven Lipper, also was able to maneuver safely around the stopped truck, but as Lipper pulled back into the right lane, he saw in his rearview mirror that the Yukon did not take evasive action: "And I was thinking to myself, this guy has got to get over pretty quick; he's getting close to that semi. . . . and then all I could see was a cloud of dust, explosion, dirt, debris or whatever." Lipper's wife called 911 to report the collision.

The State charged Mahalbasic with involuntary manslaughter, an aggravated misdemeanor, by trial information filed on October 29, 2012. Mahalbasic waived his right to a jury trial and a bench trial occurred on August 9, 2013. The district court found him guilty in a written ruling issued on September 17, 2013. The court sentenced Mahalbasic to two years of incarceration, suspended the prison term, and imposed a $625 fine plus court costs and surcharges. Under Iowa Code sections 910.2 and 910.3B, the court ordered him

to pay restitution in the amount of $150,000, if the victims died intestate, or an amount determined by Iowa Code section 633.210 if the victims died testate.

On appeal, Mahalbasic argues the State presented insufficient evidence to support his conviction. Specifically, he challenges the proof of recklessness and argues his actions were not the proximate cause of the two deaths.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for correction of legal error. *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). We uphold a finding of guilt if it is supported by substantial evidence. *State v. Rohm*, 609 N.W.2d 504, 509 (Iowa 2000). Substantial evidence exists if the record reveals a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). We view the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (internal quotation marks omitted). We consider all record evidence, not just evidence which supports the finding of guilt. *Rohm*, 609 N.W.2d at 509.

## III. Analysis of Substantial Evidence Challenges

The district court found Mahalbasic guilty of the aggravated misdemeanor version of involuntary manslaughter. To commit this offense, a person must "unintentionally cause the death of another person by commission of an act in a manner likely to cause death or serious injury." Iowa Code § 707.5(2) (2011).[2]

---

[2] After 2013, the section was renumbered as section 707.5(1)(b).

Mahalbasic challenges the State's proof of the mens rea element and the causation element. We will examine each claim in turn.

**A.    Recklessness**

Recklessness is an implied requirement of section 707.5(2). *State v. Conner*, 292 N.W.2d 682, 684 (1980); *State v. Kernes*, 262 N.W.2d 602, 605 (Iowa 1978) (defining recklessness as "conduct evidencing either a willful or wanton disregard for the safety of others"). The State was required to prove beyond a reasonable doubt that Mahalbasic acted recklessly in parking his truck on the traveled portion of the four-lane highway.

Recklessness means a conscious disregard for the consequences of an action. *See State v. Thompson*, 570 N.W.2d 765, 769 (Iowa 1997). "[F]or recklessness to exist, the act must be fraught with a high degree of danger. In addition, the danger must be so obvious from the facts that the actor knows or should reasonably foresee that harm will probably—that is, more likely than not—flow from the act." *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). "In other words, a person acts recklessly when the person's actions are not merely unreasonable but 'highly' unreasonable; not merely a departure from ordinary care but an 'extreme' departure." *State v. Sutton*, 636 N.W.2d 107, 111 (Iowa 2001) (internal citations omitted).

Mahalbasic contends his actions did not rise to the level of recklessness. He compares his case to *State v. Cox*, 500 N.W.2d 23, 23-26 (Iowa 1993) and *State v. Klatt*, 544 N.W.2d 461, 463 (Iowa Ct. App. 1995). In both of those appeals, vehicular homicide convictions were reversed because evidence

showing the defendants violated rules of the road was not enough, standing alone, to constitute reckless behavior. *See Cox*, 500 N.W.2d at 26 (holding defendant's act of falling asleep at the wheel and failing to yield at a stop sign, without accompanying evidence of speeding or erratic driving, was insufficient as a matter of law to establish recklessness); *Klatt*, 544 N.W.2d at 463 (holding act of passing two semi-trailers in a no passing zone was not alone reckless when defendant was not speeding and tried to look for oncoming traffic). Mahalbasic claims he did not know stopping his semi on a stretch of road where it could be seen from a distance would likely result in death or serious injury to other motorists. Mahalbasic also focuses on his act of turning on his hazard signals, citing Iowa Code section 321.317(5), claiming it showed "he cared" and did not disregard the safety of the other motorists. He contends the district court—in finding he acted recklessly—overlooked his conscious concern for the consequences of his act.

For its part, the State relies on *State v. Conyers*, 506 N.W.2d 442 (Iowa 1993). In *Conyers*, our supreme court upheld a vehicular homicide conviction where the defendant drove ten miles an hour over the posted speed limit in a school zone, ran a red light, careened through a marked crosswalk, then struck and killed a nine-year-old girl. 506 N.W.2d at 443. Conyers had been warned not to drive the car because his brakes were not working properly. *Id.* at 443-44. Conyers was reckless because his actions showed a conscious disregard for the safety of others. *Id.* at 445. The State argues: "Just as Conyers chose to drive his truck with inadequate brakes rather than repair them, Mahalbasic chose to

park his semi-truck on the highway rather than pull off onto the shoulder." The State attacks Mahalbasic's contention that turning on his emergency flashers signaled his conscious concern: "[T]he fact that the defendant turned on his hazard lights does not excuse his poor decision to park on the highway nor did it eliminate the substantial risk of an accident." The State concludes: "It was reckless of Mahalbasic to willingly create an obstacle on the road that was essentially an accident waiting to happen."

We agree with the State. "Criminal culpability requires more than merely negligent behavior." *State v. Rodriguez*, 804 N.W.2d 844, 849 (Iowa 2011). But in finding recklessness, our courts "do not condition guilt on an intent to cause harm." *Id.* Instead we look to whether the defendant "embarked on an activity which is known, or should be known, to pose a substantial risk to others." *State v. Conroy*, 604 N.W.2d 636, 638 (Iowa 2000).

The most critical facts here are the characteristics of the highway where Mahalbasic parked his semi-trailer. Highway 34 is a major, four-lane divided thoroughfare. The trooper testified the stretch where the collision occurred was "a pretty busy area" even on a Sunday afternoon. The crowning detail in the risk calculous that should have been obvious to truck driver Mahalbasic was the speed limit of sixty-five miles per hour—which hindered the ability of other motorists to react and avoid a collision with a stationary obstacle blocking a full lane of traffic. We agree with the district court's conclusion that Mahalbasic's creation of this obstruction on a well-traveled highway was "fraught with a high degree of danger." *See Torres*, 495 N.W.2d at 681.

We likewise agree with the district court that Mahalbasic's conduct was "highly unreasonable." *See Sutton*, 636 N.W.2d at 112. Mahalbasic did not have mechanical trouble; he impulsively stopped his truck essentially to do some shopping. Mahalbasic not only brought his truck to a dead stop on a major thoroughfare, where vehicles are allowed to travel at substantial speeds, but another motorist saw him backing up on the highway before abandoning his rig in the right lane. The record showed the shoulder was wide enough for him to pull off the highway; yet, Mahalbasic chose to park his rig in travelled portion of the roadway. The danger posed by the truck was not fleeting. Mahalbasic exited the cab and walked away while other drivers were required to take evasive action to avoid a fatal collision.

We finally address Mahalbasic's argument that by turning on his hazard lights he "showed he cared" about the safety of other motorists. Mahalbasic's counsel acknowledged at oral argument that the act of turning on the trailer's flashers cuts both for and against the defense position. While it may be a small indication Mahalbasic desired to reduce the risk to oncoming traffic, it was an even greater recognition that he had created a grave danger that required warning. Blocking the right lane of traffic on this four-lane highway when the truck was not disabled was fraught with a high degree of danger and Mahalbasic knew or should have known the risk his conduct posed to other drivers. The district court was correct in finding substantial evidence of recklessness.

**B. Proximate cause**

Mahalbasic next argues his actions were not the legal, or proximate, cause of the two deaths. Instead, he argues victim Hagen's driving was the cause because Hagen failed to keep a proper lookout.[3]

When causation is questioned in a criminal case, normally we must "consider if the criminal act was a factual cause of the harm." *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012) (quoting *State v. Tribble*, 790 N.W.2d 121, 126–27 (Iowa 2010)). Unless multiple acts contribute to bringing about a single consequence, factual cause is determined by asking: would the harm have occurred absent the defendant's conduct? *Id.* Sometimes criminal cases present questions of both factual and legal, or proximate, cause. *Id.* at 371.

In this case, Hagen would not have rear ended the truck if Mahalbasic had not left it parked in the traveled portion of the highway. Mahalbasic's act was the factual cause of harm.[4] But we read Mahalbasic's argument as also challenging legal causation. For legal causation, a defendant's act must create the dangerous condition that would make such events more likely to occur. *State v.*

---

[3] Keeping a proper lookout is common law duty recognized in Iowa tort cases: "Proper lookout, we have often said, implies being watchful of the movements of the driver's own vehicle as well as *the movements of the thing seen or seeable*, and involves the care, watchfulness and attention of the ordinarily prudent person under the circumstances." *Christensen v. Kelley*, 135 N.W.2d 510, 513 (Iowa 1965).

[4] Our supreme court has not addressed whether the "legal cause" aspect of the former proximate cause doctrine has continuing viability in criminal cases after its decision in *Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009) (adopting the Restatement (Third) of Torts formulation of causation for civil cases and substituting the "scope of liability" inquiry for the former concepts of "proximate cause" and "legal cause"). *Adams*, 810 N.W.2d at 372 n.7.

*Fox*, 810 N.W.2d 888, 892 (Iowa Ct. App. 2011) (quoting *State v. Murrary*, 512 N.W.2d 547, 550 (Iowa 1994)).

> *Murray* distinguished factual and legal causation as follows:
>
> "[A]n act is a cause of an event if two conditions are satisfied: the event would not have occurred without the act; the act made the event more likely. The first condition is necessary to distinguish the attempted from the completed crime, the second to rule out cases in which, while the event in question would not have occurred but for the act, the act did not create the kind of dangerous condition that would make such events more likely to occur."

512 N.W.2d at 550 (quoting *Brackett v. Peters*, 11 F.3d 78, 79 (7th Cir. 1993)).

Following this description of legal causation, Mahalbasic cannot be relieved of criminal responsibility even if an intervening act broke the chain of causal connection between his conduct of parking his semi on the highway and the victims' deaths. The intervening act would only clear Mahalbasic of accountability for the homicide if it was the sole proximate cause of the deaths. *See Fox*, 810 N.W.2d at 892.

Mahalbasic claims Hagen's inattentiveness caused the collision. But any fault that could be ascribed to Hagen for not stopping in time to avoid rear ending the truck was not the sole proximate cause of the deaths. *See, e.g., State v. Hubka*, 480 N.W.2d 867, 870 (Iowa 1992) (holding failure of children to wear seatbelts was not superceding cause of their deaths as to preclude criminal responsibility on defendant); *State v. McFadden*, 320 N.W.2d 608, 611 (Iowa 1982) (holding deceased driver's voluntary participation in drag race did not bar involuntary manslaughter prosecution).

When we consider a "scope of liability" assessment, we believe the harm to Hagen and his daughter was a result of the risks posed by Mahalbasic's reckless conduct. *See Fox*, 810 N.W.2d at 892 n.2 (citing *Thompson,* 774 N.W.2d at 838–39 ("When, as in this case, we have been called upon to consider the role of an intervening or superseding cause, the question of the foreseeability of the superseding force has been critical.")). In other words, it was reasonably foreseeable that other motorists, negligent or not, would collide with Mahalbasic's truck during the time it was parked on the highway. *See People v. Charles*, No. 246034, 2006 WL 258941, at *4 (Mich. Ct. App. Feb. 2, 2006) (finding it is "reasonably foreseeable that another vehicle will collide with a car that is parked in a moving traffic lane of a major freeway"). The district court did not err in finding the causation element met.

**AFFIRMED.**