In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-1451 & 00-1452

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS W. TWIEG and CONSTANCE A. TWIEG,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 99 CR 109--J.P. Stadtmueller, Chief Judge.

Argued September 26, 2000--Decided February 1, 2001

Before COFFEY, RIPPLE, and ROVNER, Circuit Judges.

ROVNER, Circuit Judge. Thomas and Constance Twieg pled guilty to three counts of filing false federal income tax returns in violation of 26 U.S.C. sec. 7206(1), based upon their failure to report all of the business receipts from the carpet sales and installation business which they operated from 1990 through 1996. The individual tax returns filed by the Twiegs for 1991 through 1995 underreported the receipts from the business by more than $1.3 million. In addition, a return filed by Thomas Twieg for 1990 failed to report over $98,000 in business receipts. Because there was no indication that Constance Twieg was aware of the underreporting on the 1990 return, she was not held accountable for the tax losses associated with the 1990 return.

At sentencing, the court was required to calculate the tax loss resulting from the offense pursuant to U.S.S.G. sec. 2T1.1 (1998). The court determined that Thomas Twieg was responsible for tax losses totaling $141,170 for the years 1990 through 1995, of which $107,586 represented his liability for normal income taxes and $33,584 was attributable to unpaid self-employment taxes. With respect to Constance Twieg, the court found tax losses amounting to $127,716, of which

$100,700 stemmed from unpaid normal income taxes and $27,016 related to self-employment taxes. The court rejected the Twiegs' argument that self-employment taxes should be excluded from the "tax loss" under sec. 2T1.1, and the Twiegs appeal that determination. The inclusion of the self-employment taxes increased the base offense level for each defendant by one level.

The sole issue on appeal is whether the district court erred in including self-employment taxes in the calculation of the "tax loss" under the Sentencing Guidelines. We begin with the plain language of the Guidelines provision at issue. United States v. Andreas, 216 F.3d 645, 676 (7th Cir. 2000) ("When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further.") Section 2T1.1(c)(1) of the Guidelines provides that "if the offense involved tax evasion or a fraudulent or false return . . . the tax loss is the total amount of loss that was the object of the offense (i.e. the loss that would have resulted had the offense been successfully completed)." The Notes following the section state that for offenses involving the filing of a tax return in which gross income was underreported, the tax loss shall equal 28% of the unreported gross income plus 100% of any false credits claimed, "unless a more accurate determination of the tax loss can be made." sec. 2T1.1(c)(1), Note (A). (The parties here proceeded under the theory that a more accurate determination was possible, and apparently a higher tax loss figure would have resulted from application of the 28% presumption.) Finally, the Application Note to that provision clarifies, in relevant part, that all violations of the tax laws should be considered in calculating tax loss:

In determining the total tax loss attributable to the offense (see sec. 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated.

U.S.S.G. sec. 2T1.1, Application Note 2.

Nothing in that language indicates that self-employment taxes should be excluded from the calculation of tax loss. The Twiegs do not deny that the failure to pay the self-employment taxes constituted "conduct violating the tax laws." Thus, by the plain language of the Guidelines it should be considered in calculating tax loss. They nevertheless raise a number of arguments for

excluding self-employment taxes, which we will briefly address.

The Twiegs point out that sec. 2T1.1 was amended in 1993, and assert that a comparison of the pre- and post-1993 language reveals an intent to exclude self-employment taxes. The amendment consolidated a number of tax violations into one guideline, whereas they previously had been addressed in multiple guidelines provisions. As a result, the title of Subpart 1 describing the type of taxes included within sec. 2T1.1 was amended from "Income Taxes" to "Income Taxes, Employment Taxes, Estate Taxes, Gift Taxes, and Excise Taxes (Other Than Alcohol, Tobacco, and Custom Taxes)." According to the Twiegs, all of the listed classes of taxes are included seriatim in separate chapters of the Internal Revenue Code, and self-employment taxes are included in a separate chapter not specifically listed. They conclude that the failure to list the self-employment taxes indicates an intent to exclude them.

An examination of the structure of the Internal Revenue Code, however, turns their argument on its head. The Internal Revenue Code is divided unofficially into a number of Subtitles, of which the first four are "Subtitle A   Income Taxes," "Subtitle B   Estate and Gift Taxes," "Subtitle C   Employment Taxes," and "Subtitle D Miscellaneous Excise Taxes." Within "Subtitle A   Income Taxes" are a number of chapters, including Chapter 2 "Tax on Self-Employment Income." Thus, the structure of the Code indicates that self-employment taxes are a subcategory of "Income Taxes." Rather than supporting an argument for excluding those taxes, an examination of the structure indicates they should be included in tax loss under the category of "income tax." If we read the Guidelines language as tracking the structure of the Code, then anything included within those four subtitles would presumably fall within "tax loss" under the Guidelines, including self-employment taxes. The plain language, then, indicates an inclusive approach to determining tax loss, and provides no support for excluding self-employment taxes. The Twiegs' attempts to divine a contrary intention by the Sentencing Commission through various methods are speculative at best. In the end, the plain language evidences no intent to exclude unpaid self-employment taxes, and appears to include all actual tax loss incurred as a result of the conduct that violated the tax laws.

The Twiegs also assert that there is no tax loss to the government because the self-employment taxes are essentially payments to a government retirement plan, and the failure to pay the taxes will result in a loss to the individual because it will decrease the benefits for which he is eligible upon retirement. That argument is meritless. The failure to pay the self-employment taxes results in a loss to the government of at least the present value of the tax payments, and possibly the future value as well because the individual may never become entitled to collect those payments. As the Twiegs well know, the self-employment tax is not a personal retirement account in which the Twiegs' payments are dedicated to them and which the government cannot use. The failure to pay self-employment taxes that are owed results in a tax loss to the government, not just the Twiegs.

The Twiegs also argue that the inclusion of the self-employment tax thwarts the Guidelines' purpose of achieving uniformity, because self-employed individuals face higher sentences than those employed by others who are not themselves responsible for paying taxes towards retirement. Any difference in the sentence, however, is attributable to the difference in tax violations by the individuals. The self-employment tax, like other taxes such as capital gains or gift taxes, will not apply to all persons at all times. It is not unequal treatment to hold persons accountable for the failure to pay taxes that were owed by them. That others are not subject to a similar tax obligation, and thus are not sentenced for failure to fulfill that obligation, is meaningless in this context. Moreover, at least one court has included delinquent social security taxes in the calculation of "tax loss," thus indicating that the analogous taxes for others may be included in tax loss as well. See United States v. Martinez-Rios, 143 F.3d 662 (2d Cir. 1998).

Finally, the Twiegs assert that United States v. Hunerlach, 197 F.3d 1059 (11th Cir. 1999), confronted a similar question and excluded the amount in question, and they urge us to follow the reasoning of that case. Yet Hunerlach is quite different from the situation before us, and in fact again supports the opposite result. In Hunerlach, the court faced the issue of whether interest and penalties should be included in the "tax loss." Id. at 1069-70. The Guidelines defined tax loss as the "total amount of the loss that was the subject of the offense," and the court held that the provision was ambiguous in the context of interest and penalties. Id. The

court pointed out, however, that Application Note 1 unequivocally stated that "[t]he tax loss does not include interest and penalties," and therefore held that interest and penalties were not included in tax loss under the Guidelines. Id. at 1070, citing U.S.S.G. sec. 2T1.1 comment. (n.1) (1997). There is no similar comment included in the Guidelines that indicates an intent to exclude self-employment taxes, and therefore Hunerlach is unhelpful. Moreover, in the present case we are not addressing interest and penalties, with respect to which the provision covering "tax loss" is ambiguous, but are considering the unpaid "taxes" themselves, which fall within the plain meaning of the words "tax loss" and the corresponding definition.

Accordingly, neither Hunerlach nor any of the other arguments raised by the Twiegs provides support for reversing the decision of the district court regarding the meaning of "tax loss." For the above reasons, the decision of the district court is affirmed.